IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOE PRICE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 18-cv-1050-RJD |
| | ) |
| CHRISTINE BROWN, | ) |
| | ) |
|    Defendant. | ) |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Joe Price, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). In his Second Amended Complaint, Plaintiff alleges he is a 63-year-old, hearing impaired prisoner who suffers from several chronic mental and physical problems. Plaintiff alleges his inability to hear caused him to miss meals, yard time, and other privileges. Plaintiff asserts he has been provided an ADA Individualized Communication Plan in the IDOC and has been approved for various ADA accommodations, including the issuance of hearing aids, but has had issues with the same. Following the filing of Plaintiff's Second Amended Complaint and the Court's ruling on motions for summary judgment on the issue of exhaustion of administrative remedies, Plaintiff proceeds on the following claims:

    Count One:    Eighth Amendment claim against Defendant Christine Brown for deliberate indifference to Plaintiff's serious medical need for refusing Plaintiff new batteries and filters for his hearing aid.

    Count Two:    Eighth Amendment conditions of confinement claim against Defendant Christine Brown for refusing Plaintiff new batteries and

                    filters for his hearing aid.

    Count Three:    Eighth Amendment conditions of confinement claim against Defendant Christine Brown for refusing Plaintiff ADA accommodations as a hearing-impaired inmate.

(Docs. 116, 161).

This matter is now before the Court on Defendant Brown's Motion for Summary Judgment (Doc. 181). For the reasons set forth below, the Motion is **GRANTED**.

## Factual Background

Plaintiff's claims arise from his incarceration at Pinckneyville Correctional Center, where he was housed from late 2017 through 2019 (Deposition of Joe Price, Doc. 182-1 at 2-3). Plaintiff is a hearing-impaired inmate, and, prior to his incarceration at Pinckneyville, was issued an ADA Individualized Communication Plan and Permit ("ADA Plan") (Deposition of Christine Brown, Doc. 182-2 at 7; Doc. 182-3). Plaintiff's Communication Plan granted the use of a hearing aid, an ID identifying him as hard of hearing, special permit items, interpreter services, and a cell door sign indicating he is hard of hearing (*see id.*). Defendant did not complete any portion of Plaintiff's Communication Plan.

On or about December 13, 2017, the Healthcare Unit Administrator ("HCUA") at Western Correctional Center sent an email to Defendant HCUA Brown, who was also the ADA Coordinator, notifying her that Plaintiff was being transferred to Pinckneyville and advising Brown that Plaintiff is an ADA offender for hearing impairment and that he had been issued a new hearing aid (Doc. 182-2 at 6).

### *Issues Concerning Assistive Devices Excluding Plaintiff's Hearing Aid*

On March 14, 2018, Plaintiff submitted an emergency grievance requesting the ADA Plan and Permit that was issued and specifically mentioned: (1) alternative notification of auditory

announcements; (2) I.D. designation; (3) special permit items such as a vibrating watch, headphones, and an amplifier; (4) auxiliary aids such as visual aids, writing material, and assistive listening devices; (5) sign language interpreter services; and (6) cell door sign indicating "hearing impaired" (Doc. 30-2).   Plaintiff asserts he wrote letters to Grievance Officer Hale and Defendant Brown[1] concerning the same, but to no avail (*id.*; *see also* Doc. 187-1).   Plaintiff writes that his hearing is getting worse, and asserts he is not receiving any assistance from HCUA Coordinator Brown (*id.*).   Plaintiff makes no specific mention of his hearing aids or issues with the same in this grievance (Doc. 30-2).   Hale sent an email with Plaintiff's grievance to Brown for review and a response (Doc. 185-6 at 3).   Brown responded on May 16, 2018 stating, in relevant part, that "[t]he file reflects [Plaintiff] was approved to have his hearing aid sent out to be repaired on 4/23/18. We are in the process of setting up with the company to get it looked at. The ADA individual plan [Plaintiff] has copied does not reflect anything that I denied, this is from another facility. He should have a vibrating watch and headphones according to this form in the chart. I have not received anything from him requesting replacement of these items. He will be called over next week to discuss where these items are." (*id.* at 2-3).   Brown's response was included in the Grievance Officer's May 17, 2018 response to Plaintiff's emergency grievance (*see* Doc. 30-3).

Plaintiff submitted paperwork on August 20, 2018 requesting a "hard of hearing" designation on his ID and a sign on his door (Doc. 182-2 at 10-11).   Defendant Brown sent Plaintiff a "Memorandum" on October 9, 2018, which stated that Plaintiff should be allowed to place a hard of hearing ("HOH") sign on his door (*id.* at 13; *see* Doc. 182-4).   On October 10,

---

[1] At all times relevant, Brown was both the Healthcare Unit Administrator and ADA Coordinator.   As ADA Coordinator, Brown investigated offender grievances and complaints concerning offender ADA accommodations and works with other staff members and medical suppliers in an attempt to ensure each offender receive his or her accommodations (Doc. 166 at 2).

Page **3** of **12**

2018, Defendant corresponded with Assistant Warden Love regarding ADA accommodations for Plaintiff, including cell placement (*see* Doc. 182-5). Defendant indicated Plaintiff had his required permits, but security was not allowing Plaintiff to hang his HOH sign in the cell (*id.*). Defendant also requested that Plaintiff be moved to the front of the housing unit wing, and Defendant was subsequently informed that Plaintiff had been moved approximately two weeks prior to a cell closest to a speaker (*id.*).

It is undisputed that Plaintiff attended a meeting with the Chicago Hearing Society, along with other hearing-impaired inmates (Doc. 182-1 at 8). There is a dispute as to whether this meeting took place in early 2018, as testified to by Defendant Brown (Doc. 182-2 at 9), or in July 2019, as asserted by Plaintiff[2]. Plaintiff testified he received an ID badge indicating he was hearing-impaired following this meeting (Doc. 182-1 at 15-16). Plaintiff also received headphones and an HOH placard for his cell after this meeting (*id.*). Plaintiff testified he was not sure when he received his vibrating watch, but believes it was prior to this meeting (*id.* at 16).

In March 2019, Defendant completed an updated Communication Plan for Plaintiff and indicated Plaintiff should have a hearing aid for his right ear, a traditional phone, and a vibrating watch (Doc. 185-10). Another updated Communication Plan was completed by Defendant in July 2019, and Plaintiff was to be provided a hearing aid for both ears, over-the-ear headphones, an amplified phone, and a vibrating watch (Doc. 185-3).

***Issues Related to Plaintiff's Hearing Aid***

Hearing aids require both batteries and earwax filters to work properly (Doc. 182-1 at 5).

---

[2] In support of this fact, Plaintiff cites to his Communication Plan dated July 26, 2019 (*see* Doc. 185-3). This document does not evidence that the Chicago Hearing Society meeting took place in July 2019. This discrepancy, however, is not relevant to any material fact in this case.

An inmate can obtain new batteries for a hearing aid at Pinckneyville by requesting one directly from the healthcare unit, asking a nurse during daily medication or supply line, or submitting a request for the same in a kite directed to the healthcare unit (Doc. 182-2 at 14-16). Inmates can receive new earwax filters by requesting them from the healthcare unit (*id.* at 16). Wexford was responsible for ordering the same (*id.*). If a hearing aid needed to be replaced or repaired, the request needed to be submitted to the Medical Director and approved in Wexford's collegial review (*id.* at 18, 20). Inmates are not provided a temporary hearing aid while awaiting a repaired or a new hearing aid (*id.* at 18).

Generally, Plaintiff testified that his hearing aid earwax filters lasted one week to one month, and new batteries were supposed to be issued to him every seven days (Doc. 182-1 at 6, 10).

With regard to Plaintiff's hearing aid, the timeframes during which Plaintiff either did not have his hearing aid or that said hearing aid was not functioning properly because Plaintiff did not have batteries or a functional earwax filter are not entirely clear. From the record, it appears Plaintiff presented to nurse sick call on December 20, 2017, February 24, 2018, and March 18, 2018, requesting new hearing aid batteries (Doc. 185-9). Plaintiff's medical records establish he was provided batteries in response to these requests on December 20, 2017 and March 19, 2018 (it is not clear when Plaintiff received batteries in response to his February 24, 2018 request) (*id.*). It appears Plaintiff was at Pinckneyville for about two to three months prior to requesting new hearing aid earwax filters (Doc. 182-2 at 6). On March 30, 2018, a notation in Plaintiff's medical records indicated Plaintiff's hearing aid was filling with wax, and Plaintiff was to return if his symptoms worsened or interfered with daily functioning (Doc. 185-7). On April 9, 2018, Plaintiff presented to nurse sick call for a hearing aid battery (*see* Doc. 182-6). The nurse noted the size

of battery Plaintiff needed was not available at 8:30 a.m.; however, another notation on this date indicated Plaintiff was provided a battery at 10:30 a.m. (*see id.*). An email was directed to Defendant Brown on April 12, 2018, indicating Plaintiff needed a new hearing aid battery and filter (Doc. 182-9). Defendant responded on the same date that Plaintiff had already been given a new battery that week and she had to review Plaintiff's file concerning his filter as he had never been issued one (*id.*). Plaintiff returned to nurse sick call again on April 18, 2018, and indicated he still needed a filter for his hearing aid (Doc. 182-10). The nursing note indicated Plaintiff was placed on the MD call line for an "eval to be sent out for hearing aid filter" (*id.*; Doc. 182-2 at 17). The nurse also indicated she had previously discussed this issue with the HCUA, and Defendant testified that although she does not specifically recall speaking with the nurse about this issue, if it was written in the note, then Defendant was sure the nurse had talked to her about it (*id.* at 17-18).

Plaintiff's hearing aid was sent out for repairs on May 7, 2018 to address issues with the filter (Doc. 185-8). Plaintiff's hearing aid was returned to him on June 14, 2018, but no battery was available or provided (Doc. 182-7). The notation in Plaintiff's medical record indicated that batteries would be ordered (*id.*).

At his deposition, Plaintiff testified that at some point when his earwax filter was filling, he sent Defendant a letter and also advised her of the issue in-person when he saw Defendant in the healthcare unit (Doc. 182-1 at 6). Defendant told Plaintiff to clear the filter with a toothbrush (*id.*). Plaintiff also testified he asked Defendant for new hearing aid batteries through kites and in-person conversations, but it is not clear when these requests to Defendant were made (Doc. 182-1 at 7).

Plaintiff testified that while at Pinckneyville he went to the shower with his hearing aid

still in his ear (Doc. 182-1 at 6). As his hearing aid should not get wet, he placed it on a concrete divider (*id.*). An officer came while Plaintiff was in the shower and threw Plaintiff's hearing aid on the ground and stepped on it (*id.*). Following the destruction of his hearing aid, Plaintiff testified it took approximately six months before he was issued a new hearing aid (*id.*). Plaintiff does not recall when this occurred; however, he wrote a grievance on February 3, 2019, in which he complained that his hearing aid was damaged in the shower (*see* Doc. 185-4). The Grievance Officer's response to this grievance indicates that "per HCUA, "[Plaintiff] is scheduled to go out to see the Audiologist to replace his hearing aid. He will be responsible to take care of his replacement hearing aid; they will not continue to buy a new one every six months. The hearing aids cost over $1,500.00 apiece." (*see id.*).

Plaintiff testified that he placed the damaged hearing aid in a bag and gave it to a nurse (Doc. 182-1 at 16). The nurse told Plaintiff that Defendant was going to see if she could get it repaired (*id.*). On February 26, 2019, Defendant sent Plaintiff a memorandum stating: "[a]s I have told you previously, we have submitted to collegial and are waiting for approval for audiology for your hearing aids." (Doc. 182-8). Defendant testified that approval for a new hearing aid was required by Wexford because Plaintiff had gone through more than two hearing aids in two years (Doc. 182-2 at 16). Defendant also testified that she is not responsible for ordering medical supplies (*id.* at 20). While he was without a hearing aid, Plaintiff spoke with Defendant in-person while he was in the healthcare unit and asked about his hearing aid (Doc. 182-1 at 7). Defendant told Plaintiff she was "working on it." (*id.*). Plaintiff testified he went without a hearing aid for approximately six months and, while awaiting receipt of a new hearing aid, he submitted numerous grievances and letters concerning the same (*id.* at 6). Plaintiff testified he suffered "quite a few" seizures during the six-month period he did not have a hearing aid because he was "so depressed"

and was worrying about not knowing what was going on around him (Doc. 182-1 at 14-15). Plaintiff also testified that while he was without a hearing aid he missed chow time, ADA gym, and day room (*id.* at 17).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

### *Counts One and Two*

In Counts One and Two, Plaintiff asserts Defendant Brown violated his Eighth Amendment rights by refusing him new batteries and filters for his hearing aid. Plaintiff brings this claim under a both a theory of deliberate indifference and unconstitutional conditions of confinement.

As a preliminary matter, the Court notes that the summary judgment briefing of the parties

appears to expand the scope of these claims. Plaintiff's Second Amended Complaint was filed on November 8, 2019. Prior to the filing of the Second Amended Complaint, Plaintiff asserts his hearing aid was destroyed by a correctional officer and he went without the same for approximately six months. Plaintiff has not sought leave to amend his complaint and include these allegations in either Counts One or Two. Defendant, however, has not objected to expanding the scope of the claims from issues beyond the replacement of new hearing aid batteries and filters. The Court also acknowledges that a court may conform the pleadings to the evidence at the summary judgment stage even where there has been no formal motion by the parties. *Molex Inc. v. Wyler*, No. 04-C-1715, 2005 WL 497812, at *2 (N.D. Ill. Feb. 17, 2005) (citations omitted). As such, the Court will also consider whether Defendant Brown violated Plaintiff's Eighth Amendment rights in failing to ensure Plaintiff had an operable hearing aid after his was allegedly destroyed in 2019.

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In the context of medical claims brought under the Eighth Amendment, a plaintiff must show that his medical condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). In that same vein, courts evaluating claims of unconstitutional conditions of confinement must consider: (1) whether the defendant prison officials acted with the requisite state of mind (the subjective component) and (2) whether the alleged deprivations were sufficiently

serious to rise to the level of a constitutional violation (the objective component).  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

In this instance, Plaintiff's Eighth Amendment claims in Counts One and Two fail as there is no evidence by which a reasonable jury could find Defendant Brown acted with a "sufficiently culpable state of mind" in her handling of Plaintiff's hearing aid issues.

The Court acknowledges the record is replete with instances in which Plaintiff requested hearing aid batteries or filters, or an entire replacement hearing aid.   Indeed, taking Plaintiff at his word, hearing aids require significant upkeep insofar as the batteries and earwax filters may need to be replaced up to once per week.  While Plaintiff was at Pinckneyville, it appears he experienced some issues receiving hearing aid batteries and earwax filters, having at least three occasions where batteries were not available immediately upon demand, and one occasion where Plaintiff was made to wait about one month before a repair related to his earwax filter was completed.  There is no evidence, however, that these delays amounted to deliberate indifference or an unconstitutional condition of confinement; or moreover, that Defendant Brown was culpable under the Eighth Amendment in what actions she took or failed to take to respond to the same. Plaintiff testified he requested batteries from Defendant in-person and through kites, but he failed to identify when these requests were made or how long he was made to wait for a battery in response to any particular request.  As such, the Court cannot attribute any significant delay in Plaintiff's receipt of hearing aid batteries to Brown.

With regard to the earwax filter, there is evidence Defendant Brown was advised of Plaintiff's issues with same on April 12, 2018.  However, there is no evidence Defendant had the ability to order earwax filters; rather, the evidence establishes the request needed to go through collegial review.   Ultimately, Plaintiff's hearing aid was sent out for repairs to address issues with

the filter on May 7, 2018.  Although it was not returned to Plaintiff until June 14, 2018, there is no evidence Defendant had any control over the timeliness of the repair.

Finally, Plaintiff contends Defendant's failure to ensure he had an operable hearing aid from February 3, 2019 through June 28, 2019[3] was deliberately indifferent insofar as Defendant did not provide Plaintiff any additional assistance during this time.  Again, while it may have taken an extended period of time for Plaintiff to receive a new hearing aid in 2019, there is no evidence Defendant Brown had any control over the process or the vendor that ultimately supplied said hearing aid.  Further, Plaintiff's claim that Defendant failed to provide any additional assistance during this time is contradicted by the record, including Plaintiff's own testimony that he had a vibrating watch during this time and he used the same to alert him for chow time (Doc. 182-1 at 11).

Insofar as Plaintiff attempts to hold Defendant accountable for her staff member's failure to timely provide batteries or the like, there is no *respondeat superior* liability for government officials under § 1983 and Defendant cannot be held liable under such a theory.

For these reasons, the Court finds no reasonable jury could find Defendant Brown acted with the requisite state of mind to substantiate an Eighth Amendment violation of either deliberate indifference or unconstitutional conditions of confinement.  Defendant Brown is entitled to summary judgment on Counts One and Two of Plaintiff's Second Amended Complaint.

*Count Three*

In Count Three, Plaintiff alleges Defendant Brown violated the Eighth Amendment by

---

[3] Plaintiff failed to set forth any evidence showing Plaintiff received his hearing aid back on June 28, 2019, and Plaintiff's citation to the record does not support this fact.  In any event, the particular date on which Plaintiff's new hearing aid was issued is not dispositive.

refusing Plaintiff ADA accommodations as a hearing-impaired inmate.

In this Count, Plaintiff equates any deviation from the ADA Communication Plan drafted in 2014 at another institution as deliberate indifference. This is not the standard under the Eighth Amendment. The question is whether Defendant Brown's failure to provide certain ADA accommodations violated the Eighth Amendment. Plaintiff has failed to set forth any evidence by which a reasonable jury could make such a determination. At all times relevant, the evidence establishes Plaintiff had at least one accommodative device, including a hearing aid, a vibrating watch, or headphones. Although Plaintiff was apparently frustrated with the timeliness of receipt of certain accommodations, such as a "hard of hearing" cell door sign, the only evidence concerning Defendant's involvement with this accommodation was her approval of the same. Simply put, there is no evidence demonstrating Defendant Brown disregarded a substantial risk to Plaintiff's health or safety in her handling of accommodations for Plaintiff's hearing impairment. For these reasons, Defendant Brown is entitled to summary judgment on Count Three.

## Conclusion

Based on the foregoing, Defendant Brown's Motion for Summary Judgment (Doc. 181) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendant Christine Brown and against Plaintiff Joe Price, and close this case.

**IT IS SO ORDERED.**

**DATED: March 9, 2023**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**